UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____      │
│ DATE FILED: __6/7/2022__             │
└─────────────────────────────────────┘
```

SAMPSON COX,

                              Plaintiff,

        -against-

NURSE ASSISTANT CONSTANCE LESCANO;
DR. MIKHAIL GUSMAN; NURSE KYLE
HENRY; NURSE JUDITH ANN CAMARA;
NURSE ABIGAIL YERKES; NURSE
ADMINISTRATOR DIANE HINTON; DR.
YELENA KOROBKOVA; NURSE CAROL
CHIOCCHI; SUPERINTENDENT WILLIAM
KEYSER; and MEDICAL PERSONNEL JANE
DOES # 1–3,

                              Defendants.

No. 20-CV-7381 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Sampson Cox ("Plaintiff" or "Cox"), proceeding *pro se*, brings this action against

Defendants Nurse Assistant Constance Lescano, Dr. Mikhail Gusman, Nurse Kyle Henry, Nurse

Judith Ann Camara, Nurse Abigail Yerkes, Nurse Administrator Diane Hinton, Dr. Yelena

Korobkova, Nurse Carol Chiocchi, and Superintendent William Keyser (collectively,

"Defendants") seeking relief for alleged constitutional violations pursuant to 42 U.S.C. § 1983

("Section 1983") and for negligence in connection with his medical treatment at Sullivan

Correctional Facility.[1]  (ECF No. 2.)

        Presently before the Court is Defendants' motion to dismiss Plaintiff's Complaint.  (ECF

---

[1] Plaintiff commenced the action bringing claims arising at three correctional facilities—Sullivan, Great
Meadow, and Clinton.  (ECF No. 2.)  On October 6, 2020, this Court severed Plaintiff's claims arising from
Great Meadow and Clinton correctional facilities and transferred those claims to the United States District
Court for the Northern District of New York.  (ECF No. 16.)  This Court also dismissed claims against the
three Jane Doe defendants.  (*Id.*)  Accordingly, only claims arising at Sullivan Correctional Facility against
named defendants remain before this Court.

No. 46.)  For the following reasons, Defendants' motion is GRANTED.

BACKGROUND

The following facts are derived from a liberal interpretation of Plaintiff's allegations in his Complaint[2] ("Compl.," ECF No. 2) and are assumed as true for purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F. 3d 220, 230 (2d Cir. 2016).

## I.   Medical Treatment at Sullivan Correctional Facility

Plaintiff Sampson Cox is currently incarcerated at Great Meadow Correctional Facility ("Great Meadow").  (Compl. at 1.)  Plaintiff alleges he contracted a sexually transmitted disease in 2001, and has experienced a number of painful and distressing symptoms since then, including a "round bump on his inner thigh" that "leaked pus[]," white patches on his skin, and a "deep burning" on his "private parts," scalp, and other parts of his body.  (*Id.* at 5–6.)  The date of the onset of symptoms is unclear, but the Complaint discusses events beginning in early 2018, when Plaintiff was incarcerated at Clinton Correctional Facility ("Clinton").  (*Id.* at 5, ¶ 1.)  Plaintiff was transferred to Sullivan Correctional Facility ("Sullivan") on May 29, 2018 and then to Great Meadow in late 2019.  (*See id.* at 7, ¶ 11.)  Plaintiff makes several allegations regarding his medical treatment during his time at Sullivan, summarized below chronologically.

### A. May 2018 Events

On May 16, 2018 at around 1:40 P.M., Plaintiff was seen by Defendant Constance Lescano ("Lescano"), a nurse assistant at Sullivan, for an "incoming draft medical screening."  (*Id.* at 8, ¶¶ 12–13.)  Plaintiff described his ongoing symptoms to Lescano, noting his skin continued to burn away with white patches that form into dark burnt blotches throughout his body, he had

---

[2] The Complaint contains duplicate paragraph numbers throughout the document.  Accordingly, this Court will cite to both page numbers and paragraph numbers when referring to the Complaint.

experienced nonstop itching, stinging, vibrating, and tingly feelings since 2001, he had multiple brown spotted circles on the soles of his feet that appeared in 2002, he had "noticeable depigmentation damage" to his skin, he had a painful lump on his right testicle, he experienced deep burning on his scalp that is causing indent appearances, and he experienced nerve twitching to his eyelids that have persisted for years.  (*Id.* at 8, ¶ 13.)  Plaintiff had a blood test in 2002 that indicated he had "herpes 1 mouth bumps," but Plaintiff thought his symptoms "have always been the total opposite from someone with a simple herpes issue."  (*Id.* at 8–9, ¶ 13.)  Lescano told Plaintiff she would put him down to be seen by a doctor.  (*Id.* at 9, ¶ 14.)

On May 29, 2018 at 7:10 A.M., Plaintiff was seen for a sick call.  (*Id.* at 9, ¶ 15.)  The Complaint does not contain allegations as to who attended to Plaintiff on this date.  Plaintiff alleges his symptoms of white and burnt patches near his eyebrows and the lump on his right testicle were noted in his Ambulatory Health Record Progress Note on that day.  (*Id.*)

**B. June 2018 Events**

On June 16, 2018, Plaintiff was seen by Defendant Dr. Mikhail Gusman ("Dr. Gusman") at Sullivan.  (*Id.* at 9, ¶ 16.)  Plaintiff described his symptoms and discomforts.  (*Id.*)  Dr. Gusman examined Plaintiff and felt the lump on his right testicle.  (*Id.*)  Dr. Gusman submitted a referral for Plaintiff to receive an ultrasound for the lump.  (*Id.*)  On July 19, 2018, Plaintiff was taken to Shawangunk Correctional Facility for an ultrasound, however Plaintiff did not receive the ultrasound "due to a timely matter."  (*Id.* at 10, ¶ 17.)

On August 23, 2018 at around 9:20 A.M., Plaintiff was seen by Defendant Kyle Henry ("Henry"), a nurse in the Sullivan medical unit.  (*Id.* at 18, ¶ 28.)  Plaintiff described his symptoms but, despite multiple requests, Henry "was unwilling to examine Cox."  (*Id.*)  Henry stated, "I will put you in to see the doctor," referring to Dr. Gusman.  (*Id.*)  Plaintiff later found out Henry noted

Plaintiff was examined under a strong magnification glass and noted patterns of skin irregularities in his ambulatory health process note dated August 23, 2018.  (*Id.* at 18, ¶ 29.)  On August 24 and August 30, 2018, Plaintiff was seen again by Henry, but Henry did not perform any examination "or any other form of proper medical processing."  (*Id.* at 18, ¶ 30.)

### C. October 2018 Events

On October 8, 2018 at around 10:15 A.M., Plaintiff was seen by Lescano for an emergency sick call.  (*Id.* at 10, ¶ 18.)  Plaintiff stated his head area was extremely hot, he received nonstop itching, stinging, vibrating, and tingly feelings to his body, and he experienced pain in his testicles. (*Id.*)  Lescano checked Plaintiff's blood pressure and temperature, which were very high.  (*Id.*) Plaintiff asked Lescano to examine the depigmentation damage on his scalp, which Lescano did. (*Id.*)  Lescano stated "she could see exactly what Cox was talking about in regards to the damage that is being caused to Cox's body" and then called the facility doctor and issued Plaintiff a pill to take.  (*Id.*)  After fifteen minutes, Lescano checked Plaintiff's blood pressure and temperature again, and gave him a second pill to take.  (*Id.*)  After another fifteen minutes, Plaintiff heard Lescano tell a correction officer that she was not going to put Plaintiff in the infirmary, to which the officer "looked at the blood pressure reading and made a face expression that said wow, if spoken in words."  (*Id.*)  The correction officer told Plaintiff to return to his housing unit and that he would be called back to the medical unit the next day.  (*Id.*)  Plaintiff "found out through a medical review of his records" that Lescano "intentionally refused to note down that she viewed Cox's scalp with a light and a magnifine [sic] glass" and "did not even make mention of [the] exam performed on October 8, 2018."  (*Id.* at 11, ¶ 19.)

On October 13, 2018 at around 9:50 A.M., Plaintiff had a physical examination by Dr. Gusman.  (*Id.* at 12, ¶ 20.)  Plaintiff alleges Dr. Gusman "decided to make a mockery out of Cox's

concerns as well as complaints regarding the pain that he was feeling to his testicles." (*Id.*) Dr. Gusman "placed his hand under Cox's testicle and asked Cox which testicle has the lump. Cox stated the right. Without even feeling for the lump, Dr. Gusman let go of Cox's testicles and stated no lump." (*Id.*) Plaintiff alleges he described his symptoms and discomfort to Dr. Gusman but "Defendant Gusman refused to examine Cox." (*Id.*)

Plaintiff alleges Defendant Carol Chiocchi forged Plaintiff's signature on a refusal form on October 23, 2018. (*Id.* at 12, ¶ 21.) Plaintiff alleges Dr. Gusman had ordered him to take a pill for his itching "without even looking at [his] skin" and that Plaintiff "never refused any medication." (*Id.*)

**D. November 2018 Events**

Plaintiff alleges he had a fourth physical examination by Dr. Gusman on November 10, 2018. (*Id.* at 13, ¶ 22.) Dr. Gusman felt the lump on Plaintiff's testicle "but stated nothing to Cox as to what was going to happen next." (*Id.*) Despite Plaintiff's request, Gusman refused to examine his skin "while saying the State doesn't care. Cox asked Gusman if he cared? Gusman repeated the State doesn't care. Cox was dismissed by Gusman without any further comments." (*Id.*)

**E. March 2019 Events**

On March 1, 2019 at around 9:20 A.M., Plaintiff was seen by Defendant Abigail Yerkes ("Yerkes"), a nurse in the Sullivan medical unit. (*Id.* at 13, ¶ 23.) Plaintiff complained of deep burning sensations within his eye sockets, face, scalp, and other parts of his body as well as blurry vision and nerve twitches in his eyelids. (*Id.*) Plaintiff complained of skin depigmentation and his skin feeling "extremely loose," pain and itching in his testicles, and brown spotting on the soles of his feet. (*Id.* at 14, ¶ 23.) Plaintiff alleges Yerkes refused to examine his penis shaft, which he

claimed showed symptoms of white patches and burnt blotches.  (*Id.* at 14, ¶ 24.)  Plaintiff alleges he was "denied medical attention" that day.  (*Id.*)

On March 6, 2019, Plaintiff was called to the medical unit for pictures to be taken of his body.  (*Id.* at 15, ¶ 26.)  Plaintiff alleges he had symptoms of white patches and burnt blotches of skin on his scalp and private part on March 6, 2019.  (*Id.*)  Plaintiff alleges a medical personnel O'Connor asked Defendant Dr. Yelena Korobkova ("Dr. Korobkova") "what can be done."  (*Id.*) Plaintiff alleges the photographs did not display the symptoms he showed on that day and were "doctored in hopes to mislead the southern district court."  (*Id.*)

On March 7, 2019, Plaintiff was seen by Yerkes and Defendant Diane Hinton ("Hinton"), the nurse administrator.  (*Id.* at 14, ¶ 25.)  Hinton told Plaintiff "he needed to stop coming to the medical unit."  (*Id.*)  Plaintiff described his symptoms and concerns but Hinton repeats that "he needs to stop coming to the medical unit."  (*Id.* at 15, ¶ 25.)

### F. April 2019 Events

On April 12, 2019, Plaintiff was seen by Defendant Judith Ann Camara ("Camara"), a nurse at the Sullivan medical unit.  (*Id.* at 15, ¶ 27.)  Camara entered the medical room and "immediately" stated to Plaintiff: "I don[']t give a fuxk [sic] about your dixk [sic] balls, or skin complaints.  This is how it is going to go.  You are going to stop coming to the medical unit.  If you come down here again I[']m sending you to mental health."  (*Id.* at 15–16, ¶ 27.)  Plaintiff tried to express his medical concerns but "Camara continued to curse and yell."  (*Id.* at 16, ¶ 27.) Plaintiff got up and left the medical room.  (*Id.*)

### G. June 2019 Events

On June 21, 2019, Plaintiff was taken to Montefiore Mount Vernon Hospital for an MRI for his testicle lump.  (*Id.* at 16, ¶ 24.)  Plaintiff was attended to by three Jane Doe defendants and

Plaintiff was then transported back to Sullivan.  (*Id.*)

### H. July 2019 Events

On July 1, 2019, Plaintiff submitted a written correspondence to the nurse administrator regarding Camara's alleged misconduct on April 12, 2019 and Hinton's alleged misconduct on March 7, 2019.  (*Id.* at 17, ¶ 25.)

On July 8, 2019 at around 1:00 P.M., Plaintiff was seen by Dr. Korobkova and Hinton for "M.R.I. questions before test."  (*Id.* at 17, ¶ 26.)  Plaintiff stated he wanted to be examined and Hinton responded he would be examined "later sometime, because right now MRI is in process." (*Id.*)  Plaintiff alleges he was never examined by either defendant on July 8, 2019 or anytime thereafter.  (*Id.*)

### I. September 2019 Events

On September 10, 2019, Plaintiff alleged Dr. Korobkova "falsely provided misleading information on Cox's ambulatory health record progress note," which stated Plaintiff was called to go to the medical unit but refused.  (*Id.* at 19, ¶ 31.)  Plaintiff alleges he never refused to report to the medical unit at any time while at Sullivan.  (*Id.*)

On September 12, 2019 at around 1:20 P.M., Plaintiff was seen by Dr. Gusman, who provided him instructions on taking high blood pressure medication.  (*Id.* at 17, ¶ 27.)  Plaintiff alleged he tried to address his medical concerns "but Gusman walked out of the medical room and never came back."  (*Id.*)

### J. Superintendent William Keyser

Plaintiff alleges Defendant Superintendent William Keyser ("Supt. Keyser") was informed of Plaintiff's ongoing medical complaints and Plaintiff's allegations that Defendants Lescano, Dr. Gusman, Henry, Camara, Yerkes, Hinton, Dr. Korobkova, and Chiocchi "intentionally worked in

agreement to deny Cox his right to decent medical care." (*Id.* at 24, ¶ 40.)  Plaintiff seeks to hold

Supt. Keyser liable as a supervisor and for his denial of Plaintiff's grievances.  (*Id.*)

## II.    Relief Requested

Plaintiff alleges Defendants violated his constitutional rights and caused him pain,

suffering, physical injury, mental distress, and emotional, distress.  (*Id.* at 27–28.)  Specifically,

Plaintiff alleges violations of the Eighth and the Fourteenth Amendment and negligence.  (*Id.*)

Plaintiff seeks injunctive relief and compensatory and punitive damages in the amount of sixteen

million dollars against Defendants in their individual and official capacities.  (*Id.* at 29.)

## PROCEDURAL HISTORY

Plaintiff filed his Complaint[3] on September 9, 2020 along with more than forty pages of

medical records, grievances, and responses labeled as Exhibits A and B.  (ECF No. 2.)  On

September 11, 2020, Plaintiff moved for a preliminary injunction and a temporary restraining

order.  (ECF No. 4.)  Plaintiff was granted *in forma pauperis* status on September 16, 2020.  (ECF

No. 9.)  On September 17, 2020, Plaintiff submitted additional exhibits, containing a state court

decision and various health records.  (ECF Nos. 5–6.)  In October 2020, Plaintiff further submitted

additional grievances and sick call copies to the Court in support of his claims.  (ECF Nos. 19–

20.)  On October 6, 2020, this Court severed Plaintiff's claims arising at Great Meadow and

Clinton and transferred those claims to the Northern District of New York.  (ECF No. 16.)  This

Court also denied Plaintiff's request for a preliminary injunction and temporary restraining order

for immediate medical treatment outside of Great Meadow without prejudice to renewal in the

transferee district.  (*Id.* at 9.)  Furthermore, the Court dismissed claims against the three Jane Doe

---

[3] Plaintiff alleges he had previously filed a lawsuit regarding the same violations on November 15, 2018 but that he dismissed the action on February 4, 2020 "in hopes that DOCCS and its employees would provide adequate medical care."  (Compl. at 33.)

defendants for failure to state a claim without prejudice for Plaintiff to reassert additional facts in an amended complaint. (*Id.* at 10.)  Because Plaintiff never filed an amended complaint, only the allegations against named defendants arising at Sullivan in the Complaint remain before this Court.

On May 11, 2021, Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  (ECF No. 46.)  Plaintiff opposed the motion[4] (ECF No. 49), and Defendants filed a response in support of their motion (ECF No. 50).  From June through November of 2021, Plaintiff filed various submissions to the Court which appear to be purportedly relevant exhibits, additional grievances, and a sur-reply opposing the Defendant's motion to dismiss.  (ECF Nos. 52–56.)

## LEGAL STANDARD

### I.        Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### II.       Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity

---

[4] Plaintiff's opposition papers included additional exhibits in support of the action.  (ECF No. 49 at 13–22.)

and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555).   The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.    Section 1983

Section 1983 provides that "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."   42 U.S.C. § 1983.   Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Paterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).   To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law, and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013) (citing *Giordano v. City of N.Y.*, 274 F.3d 740, 750 (2d Cir. 2001)); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, there are two elements to a Section 1983 claim: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136

F.3d 239, 245 (2d. Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnished a cause of action for violation of federal rights created by the Constitution") (citation omitted).

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). Instead, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom.*, *Brooks v. Pataki*, 137 S. Ct. 380 (2016).

## DISCUSSION

Plaintiff brings Section 1983 claims against Defendants for violations of the Eighth and Fourteenth Amendments, along with state law claim of negligence.  (Compl. at 27.)

### I.      Eighth Amendment

Plaintiff asserts deliberate indifference and failure to protect claims under the Eighth Amendment.  As discussed below, Plaintiff has failed to sufficiently allege Eighth Amendment violations.

### A. Deliberate Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  Consequently, the government is obligated to provide adequate medical care to incarcerated people, such that the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under Section 1983.  *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976).  To state a claim of medical indifference, an inmate must show that (1) he had an

objectively serious medical need, and (2) a defendant acted with subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000).  The defendant must have actual notice of the prisoner's serious medical need.  *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986).  In other words, the official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[T]he defendant's belief that his conduct poses no serious harm . . . need not be sound as long as it is sincere."  *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006).

There are various limits to a deliberate indifference claim.  "[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  Instead, to be a constitutional violation, the act or omission must result in a "condition of urgency" that may result in "degeneration" or "extreme pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *Koehl*, 85 F.3d at 88 (holding the court incorrectly dismissed the plaintiff's claim on a 12(b)(6) motion when plaintiff alleged he was deprived of medically-needed eye glasses resulting in a significant loss of vision); *Lowrance v. Coughlin*, 862 F. Supp 1090, 1116 (S.D.N.Y. 1994) (finding plaintiff was deprived of medical care when his knee surgery was delayed due to various retaliatory prison transfers, causing pain and suffering).  Thus, for example, if a prison official deliberately ignores a gash on a prisoner's face that is becoming infected, an omission of treatment could violate the Eighth Amendment; however, the failure to provide cosmetic surgery when a prisoner nicks himself shaving would not.  *Chance*, 143 F.3d at 702.

An inadvertent failure to provide adequate medical care also fails to rise to the level of deliberate indifference.  *See Estelle*, 429 U.S. at 105–06.  "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the

treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703 (internal citations omitted).

Plaintiff brings deliberate indifference claims against Defendants in their individual and their official capacities.  Reading the Complaint liberally, Plaintiff alleges Defendants failed to adequately treat his medical conditions and that some Defendants have fabricated medical records.

### 1.  Disregard for Medical Needs

Based on the Complaint and the documents incorporated therein, the Court finds the allegations do not sufficiently plead inadequate medical care under the Eighth Amendment deliberate indifference standard.  Reading the allegations liberally, Plaintiff alleges Defendants refused treatment or failed to provide adequate treatment for his medical needs.  Plaintiff details persistent symptoms of burning sensations on his scalp and his skin, white patches that form into dark burnt blotches of skin throughout his body, nonstop itching, stinging, vibrating, and tingly sensations, depigmentation damage to his skin, nerve twitching on his eyelids, and has a painful lump on his right testicle.  (*See* Compl. at 8, ¶ 13.)  Plaintiff describes his numerous visits to the Sullivan medical unit and his treatment by Defendants from May 2018 through September 2019.  (*See* Compl.)  But Plaintiff does not allege what, if any, and how his medical needs were disregarded.

Notably, Plaintiff's allegations appear to be disagreements over the proper medical treatment, which the Second Circuit has made clear is insufficient to create a constitutional claim absent allegations that the treatment given was inadequate.  *See Chance*, 143 F.3d at 703.  For instance, Plaintiff alleges Defendant Lescano refused to place him in the infirmary after providing treatment for his high blood pressure and temperature.  (Compl. at 11, ¶ 18.)  But Plaintiff does not allege he had a serious medical need to be placed in the infirmary, or even that he requested

and was declined placement in the infirmary.  Furthermore, Lescano examined Plaintiff's scalp, monitored his blood pressure and temperature, prescribed medicine, and referred him to be seen by a doctor.  (*Id.* at 10–11, ¶ 18.)  Plaintiff does not otherwise allege Lescano's provided treatment was inadequate to his medical needs.  Plaintiff also alleges Defendant Dr. Gusman mocked Plaintiff for his medical complaints and refused to examine Plaintiff on October 13, 2018.  (*Id.* at 12, ¶ 20.)  But not only does Plaintiff allege Dr. Gusman performed a physical examination on October 13, 2018, Plaintiff's allegations also detail Dr. Gusman's other treatments, including multiple physical examinations and prescription of medicine for Plaintiff's skin irritation and high blood pressure.  (*See id.* at 12–13, ¶¶ 20–22.)  Similarly, Plaintiff alleges Defendants Yerkes, Hinton, Camara, Dr. Korobkova, and Henry told Plaintiff to stop visiting the medical unit or otherwise refused to examine Plaintiff.  (*Id.* at 14 – 15, ¶¶ 24 – 25; at 17, ¶ 26; at 18, ¶ 28).  But these claims also fail because Plaintiff has not sufficiently alleged these defendants either refused treatment and/or had the requisite subjective state of mind in denying treatment.  To the contrary, Plaintiff continued to visit the medical unit and continued to receive medical attention and treatment from Defendants.

Accordingly, Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Lescano, Dr. Gusman, Yerkes, Hinton, Camara, Dr. Korobkova, and Henry in their individual capacities that stem from allegations of denial of medical treatment are dismissed without prejudice for failure to state a claim.

### 2.  Fabrication of Medical Records

Plaintiff alleges Defendants Lescano, Chiocchi, Dr. Korobkova, and Henry fabricated his medical records.  "District courts have generally declined to find that falsification of medical records alone gives rise to an independent Eighth Amendment claim under Section 1983."

*Sherman v. Corcella*, No. 3:19-CV-1889 (CSH), 2020 WL 4043178, at *11 (D. Conn. July 16, 2020 (collecting cases).  A plaintiff may, however, state an Eighth Amendment claim where the falsification occurred in connection with alleged deliberate indifference to that plaintiff's medical needs or where falsification indicates that a defendant acted with deliberate indifference to that plaintiff's medical needs.  *See Ruggiero v. Canfield*, No. 14-CV-00307 (LF), 2017 WL 9485692, at *15 (W.D.N.Y. Mar. 23, 2017), *report and recommendation adopted*, No. 14-CV-307 (RJA), 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017) (noting that discrepancies in the medical record could be construed as attempts to minimize the serious nature of plaintiff's lump, leading to denial of biopsy referral); *White v. Clement*, 116 F. Supp. 3d 183, 188–89 (W.D.N.Y. 2015) (evidence that registered nurse failed to document properly plaintiff's symptoms, which indicated possible adverse reaction to prescription medication, and continued same prescription could constitute deliberate indifference to inmate's serious medical need).

Here, Plaintiff alleges Defendant Lescano examined the depigmentation on his scalp but "intentionally refused to note down that she viewed Cox's scalp with a light and magnified class" and "did not even make mention of exam performed on October 8, 2018." (Compl. at 11, ¶¶ 18–19.)  Plaintiff does not allege how the alleged false record occurred in connection with any deliberate indifference of Lescano to his medical needs.  In contrast, Plaintiff has alleged that Lescano in fact provided medical treatment that day.  Plaintiff also alleges Defendant Chiocchi fabricated Plaintiff's signature on a refusal form which indicated Plaintiff refused medication prescribed by Dr. Gusman on October 23, 2018.  (*Id.* at 12, ¶ 21.)  Without more, this conclusory statement fails to allege Chiocchi acted with subjective deliberate indifference to Plaintiff's medical needs.

Next, construing the Complaint liberally, Plaintiff appears to allege Defendant Dr.

Korobkova fabricated the photographs taken of Plaintiff's body on March 6, 2019.   Plaintiff alleged the photographs taken did not document any of the symptoms Plaintiff showed on that day and the photographs were "doctored in hopes to mislead the Southern District Court."   (*Id.* at 15, ¶ 26.)   Again, these conclusory statements do not allege Dr. Korobkova doctored the photographs or that Dr. Korobkova did so with a subjective deliberate indifference to Plaintiff's medical needs. Plaintiff's allegation that Dr. Korobkova falsely noted in his medical records that Plaintiff refused to go to the medical unit when called upon on September 10, 2019.   (*Id.* at 19, ¶ 31.)   This is also a conclusory statement without any factual allegation as to defendant's subjective culpable state of mind so as to sufficiently allege a claim for an Eighth Amendment violation.

Lastly, Plaintiff alleges Defendant Henry was unwilling to examine Plaintiff on August 23, 2018 but later fabricated the records by noting that he examined Plaintiff.   (Compl. at 18, ¶¶ 28– 30.)   But Plaintiff also alleges Henry stated he would put Plaintiff down to see the doctor and that Plaintiff was later seen by Henry again on August 24 and August 30 for medical attention.   (*Id.*) The Court finds that the Complaint lacks adequate allegations that Henry deliberately deprived treatment for Plaintiff's medical needs.

Accordingly, Plaintiff's Eighth Amendment deliberate indifference claims against Defendants in their individual capacities regarding fabrication of medical records are dismissed without prejudice for failure to state a claim.

### B.  Failure to Protect

Plaintiff asserts Eighth Amendment claims against Defendants for failure to protect.   (*Id.* at 27.)   To state a failure to protect claim, a prisoner must satisfy two elements: (1) he faced a sufficiently serious risk of harm, and (2) an officer deliberately failed to protect him from that harm.   *Farmer*, 511 U.S. at 828 (citations omitted).   A review of Plaintiff's pleadings indicates the

failure-to-protect claims are duplicative of Plaintiff's deliberate indifference claims because all of the allegations are centered on Defendant's alleged inadequate treatment of Plaintiff's medical conditions. *See, e.g.*, *Bergeron Davila v. Schmaling*, No. 16-CV-1665-JPS, 2017 WL 2275004, at *2 (E.D. Wis. May 24, 2017) (dismissing failure-to-protect claims as "duplicative of the already existing deliberate indifference claim"). Accordingly, Plaintiff's failure to protect claims shall be dismissed without prejudice.

### C. Personal Involvement By Supt. Keyser

Plaintiff asserts his Eighth Amendment claims against all defendants. Plaintiff "must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren*, 823 F.3d at 136. As the Second Circuit has explained, the personal involvement of a supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), *abrogated on other grounds by Gonzalez v. City of New York*, 845 F. App'x 11 (2d Cir. 2021). The Complaint contains no allegations that Defendant Supt. Keyser was involved in the medical treatment of Plaintiff and merely includes conclusory statements that Supt. Keyser failed to properly supervise the other defendants. (*See* Compl. at 24, ¶ 40.) Accordingly, to the extent Plaintiff seeks to assert an Eighth Amendment claim against Supt. Keyser, this claim is dismissed without prejudice for failure to state a claim.

### II.     Fourteenth Amendment

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiff seeks to bring

substantive and procedural due process claims under the Fourteenth Amendment against Defendants.

### A. Procedural Due Process

To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). Reading the Complaint liberally, the only relevant factual allegations to this claim are that Defendant Supt. Keyser denied Plaintiff's facility grievances regarding inadequate medical care. (Compl. at 24, ¶ 40.) Plaintiff makes no allegations regarding the grievance process and only alleges that he received unfavorable decisions from Supt. Keyser in his grievance process. (*Id.*) This is insufficient to state a claim of procedural due process. Accordingly, this claim is dismissed without prejudice.

### B. Substantive Due Process

The substantive component of due process "protects against government power arbitrarily and oppressively exercised," *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)), and "protects an individual's interest in bodily integrity." *Gantt v. Ferrara*, No. 15-CV-7661 (KMK), 2017 WL 1192889, at *10 (S.D.N.Y. Mar. 29, 2017) (citing *Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006)). To state a substantive due process claim, a plaintiff must allege that "the state action that deprived [him] of a [constitutionally protected] interest was oppressive or arbitrary." *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 (CS), 2012 WL 4477552, at *12 (S.D.N.Y. Sept. 27, 2012). Plaintiff has not made any allegations in particular to support his claim of substantive due process violations. His substantive due process claim appears to rest on the same allegations of inadequate medical treatment by Defendants. The Supreme Court has held that "[w]here a particular Amendment

'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Because the Eighth Amendment provides a more explicitly textual source of constitutional protection for Plaintiff's claims, the Fourteenth Amendment substantive due process claim is dismissed as to all Defendants.

### III.    Supervisory Liability

Plaintiff seeks to hold Supt. Keyser liable as a supervisor for failure to remedy the alleged ongoing violations.  (Compl. at 24, ¶ 40.)  However, "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a position of authority." *Black*, 76 F.3d at 74.  Plaintiff must allege a defendant's personal involvement in the alleged constitutional violation, specifically through the defendant's own individual actions. *Iqbal*, 556 U.S. at 676; *Warren*, 823 F.3d at 136.  Accordingly, the Court declines to attach supervisory liability to Supt. Keyser.

### IV.    Claims Against Defendants In Their Official Capacities

Defendants note any claim for damages against them in their official capacities are barred under the Eleventh Amendment.  ("Defs. Mot.," ECF No. 47 at 13.)  It is well-settled that Section 1983 imposes liability for conduct that subjects a plaintiff to a deprivation of a right secured by the Constitution. *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976).  A suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  To that end, the Eleventh Amendment deprives federal courts of the authority to entertain damages actions asserted against a State "absent [a] waiver or valid abrogation" of state sovereign immunity. *Virginia Off. for Prot. & Advoc. v.*

19

*Stewart*, 563 U.S. 247, 254 (2011); *Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).  As such, the official is entitled to invoke Eleventh Amendment immunity belonging to the state and its instrumentalities, such as the New York State Department of Corrections and Community Supervision ("DOCCS").  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).  As such, to the extent Plaintiff here seeks to assert such a claim against DOCCS by asserting claims against Defendants in their official capacities, those claims are barred and dismissed with prejudice.

## V.     State Law Claims

Liberally interpreted, Plaintiff's claims of "negligence towards medical needs" appear to be medical malpractice claims against Defendants.  (Compl. at 28, ¶ 7.)  In New York, a negligent act or omission "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice."  *B.F. v. Reprod. Med. Assocs. of New York, LLP*, 136 A.D.3d 73, 80 (1st Dep't 2015); *Scott v. Uljanov*, 74 N.Y.2d 673, 674 (1989) ("[M]edical malpractice is simply a form of negligence, [and] no rigid analytical line separates the two . . . .").

Defendants claim that these state law claims must be dismissed under New York Corrections Law § 24 ("Section 24").  (Defs. Mot. at 13.)  Under Section 24, a plaintiff cannot assert a civil action against correctional officers and employees of DOCCS in their individual capacities "for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."  N.Y. Correct. L. § 24.  Section 24 precludes "'the assertion of claims against corrections officers [in their personal capacities] in any court, including the federal courts,' by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out the acts

committed by corrections officers within the scope of their employment." *Rucano v. Koenigsmann*, No. 12-CV-00035(MAD), 2014 WL 1292281, at *15 (N.D.N.Y. Mar. 31, 2014) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996)); *Ramos v. Artuz*, No. 00-CV-0149, 2001 WL 840131, at *6 (S.D.N.Y. July 25, 2001) (concluding that Section 24 barred inmate's state law claims for negligence against DOCCS employees in their individual capacities); *Francis v. Fiacco*, No. 15-CV-00901(MAD)(ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016) (barring pendent state claims, including state law false imprisonment claim, as precluded by Section 24). A plaintiff cannot use supplemental jurisdiction to circumvent Section 24 because even when a court exercises supplemental jurisdiction over state claims, the court must apply substantive state law to those claims. *Id.* (rejecting the plaintiff's argument that the court could assert supplemental jurisdiction over his state law claims against individual DOCCS defendants); *Francis*, 2016 WL 3448617, at *4 ("Section 24 of New York Correction Law governs substantive rights; it is not procedural."). Plaintiff does not appear to allege Defendants acted outside the scope of their employment. *See Francis*, 2016 WL 3448617, at *4. Accordingly, Plaintiff's state law claims against Defendants, who are alleged to be DOCCS employees, in their individual capacities are dismissed with prejudice for lack of subject matter jurisdiction. *Colón v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *8 (S.D.N.Y. Sept. 15, 2017).

Likewise, the Eleventh Amendment bars any state law claims against Defendants in their official capacities. The Eleventh Amendment "forbids suits against states for monetary damages." *Kirkendall v. Univ. of Connecticut Health Ctr.*, 205 F.3d 1323 (2d Cir. 2000). It is a "well settled" doctrine that the Eleventh Amendment "prohibits federal courts from entertaining suits that seek to enforce state law against state officers." *Wolpoff v. Cuomo*, 792 F. Supp. 964, 965–66 (S.D.N.Y. 1992) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)); *see also*

*Deadwiley v. New York State Office of Children & Family Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) ("the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court") (quotations and citation omitted).  Given the Eleventh Amendment's prohibition, Plaintiff's state law claims asserted against Defendants in their official capacities are barred and are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's Eighth Amendment and Fourteenth Amendment claims against Defendants in their individual capacities are dismissed without prejudice.  Plaintiff's negligence claims against Defendants in their individual capacities as well as all claims against Defendants in their official capacities are dismissed with prejudice.

Plaintiff is granted leave to file an Amended Complaint as to the claims that were dismissed without prejudice.  If Plaintiff chooses to do so, Plaintiff will have until August 8, 2022 to file an Amended Complaint.  Defendants are then directed to answer or otherwise respond by September 7, 2022.  If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 46.  The Clerk of Court is further directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to show service on the docket.

Dated:   June 7, 2022                                     SO ORDERED:
         White Plains, New York

                                              _____
                                                     NELSON S. ROMÁN
                                                 United States District Judge